UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF NORTH CAROLINA
Misc. No. 1:06 MC 46

| | |
|---|---|
| THE SCO GROUP, INC.,<br><br>Plaintiff/Counterclaim-Defendant,<br><br>v.<br><br>INTERNATIONAL BUSINESS MACHINES CORPORATION,<br><br>Defendant/Counterclaim-Plaintiff. | Case No. 2:03CV0294DAK (pending in the District Court of Utah before Judge Dale A. Kimball) |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO ENFORCE SUBPOENA AND COMPEL DEPOSITION

Pursuant to Rules 30 and 45 of the Federal Rules of Civil Procedure and Local Rule 7.3 of the United States District Court for the Middle District of North Carolina, Plaintiff, The SCO Group, Inc. ("SCO"), submits the following Memorandum of Law in support of its Motion to Enforce Subpoena and Compel the Deposition of Non-Party Otis Wilson.

### NATURE OF THE MATTER BEFORE THE COURT

This matter is before the Court on SCO's Motion to Enforce a Subpoena and Compel[1] the Deposition of Non-Party Otis Wilson. SCO's Motion arises out of a pending case in the United States District Court for the District of Utah, *The SCO Group, Inc. v. International Business Machines, Inc.*, Case No. 2:03CV0294DAK (Kimball, J.) (the "Utah litigation"). Mr. Wilson, a resident of Greensboro, North Carolina, was involved in the execution of certain contracts that are at issue in the Utah litigation. The instant Motion seeks to enforce a subpoena and Notice of

---

[1] *See, e.g., Am. Chiropractic Ass'n, v. Trigon Healthcare, Inc.*, No. 1:00CV00113, 2002 WL 1397015 (W.D. Va. June 26, 2002) (treating motion to enforce the subpoena for documents and 30(b)(6) testimony as a motion to compel pursuant to Fed.R.Civ.P. 45(c)(2)(B)).

Deposition served on Mr. Wilson on 19 January 2006. (*See* Affidavit of Service of Subpoena, attached as Exhibit A.)

## STATEMENT OF FACTS

The Utah litigation involves certain software agreements that IBM and Sequent Technologies, Inc. (which IBM acquired in 1999) entered into with SCO's predecessor-in-interest AT&T Technologies, Inc. ("AT&T") in 1985. The signatory to those agreements on behalf of AT&T is Mr. Wilson. Mr. Wilson's views as to the parties' intent under the 1985 agreements is plainly at issue. Indeed, after the lawsuit had been commenced, counsel for IBM met with and secured a declaration from Mr. Wilson regarding the 1985 agreements. IBM thereafter noticed Mr. Wilson's deposition, while representing him, and produced the declaration days before his deposition, on June 8, 2004. (Wilson 2004 Notice of Deposition, attached as Exhibit B.)

### A. The Wilson Deposition Subpoena

Counsel for SCO cross-examined Mr. Wilson at his June 2004 deposition. However, because of the timing of the deposition in the early stages of discovery in the Utah litigation, SCO was unable to conduct a thorough examination of Mr. Wilson. In addition, counsel for SCO was unable to ask Mr. Wilson any questions regarding crucial documentary evidence that was among tens of thousands of documents produced by third party Novell, Inc. and discovered by SCO only several days before Mr. Wilson's deposition. That documentary evidence is the transcript of deposition testimony that Mr. Wilson gave in 1992 regarding the meaning of an agreement that is virtually identical to the 1985 agreements at issue in the Utah litigation. In addition, Mr. Wilson's deposition testimony in 1992 concerned AT&T's intent under its standard software agreements in the 1980s, of which the 1985 agreements indisputably are examples.

2

Since the time of Mr. Wilson's June 2004 testimony, numerous deponents in the Utah case have identified Mr. Wilson as an important person with respect to the negotiation of the 1985 agreements. In many instances, counsel for IBM have asked witnesses whether they agree with the declaration and deposition testimony that Mr. Wilson gave in June 2004.[2] In other instances, deponents have testified that Mr. Wilson's testimony regarding the negotiation and meaning of the 1985 agreements is relevant to an interpretation of those agreements. Due to Mr. Wilson's role as a central figure regarding the 1985 agreements and in light of SCO's limited opportunity to cross-examine Mr. Wilson at his June 2004 deposition, SCO served a deposition subpoena on Mr. Wilson on 18 January 2006. (*See* Affidavit of Service of Subpoena, attached as Exhibit A.) The deposition was noticed for January 27. (Wilson 2006 Notice of Deposition, attached as Exhibit C.)

On January 25, during a break in a deposition, counsel for IBM informed counsel for SCO that IBM did not believe Mr. Wilson was under subpoena to testify on January 27, and that counsel for IBM did not expect the deposition to proceed. (Declaration of Edward Normand dated April 12, 2006 ("Normand Decl."), ¶ 5, attached as Exhibit D.)

**B.     The January 26 Teleconference and *Ore Tenus* Court Order.**

On January 26, counsel for SCO and counsel for IBM participated in a previously scheduled conference call with Magistrate Judge Brooke T. Wells of the United States District Court for the District of Utah. During the conference call, SCO was represented by Edward Normand of Boise, Schiller & Flexner LLP and IBM was represented by Todd Shaughnessy of Snell & Wilmer LLP in Salt Lake City, Utah. Mr. Shaughnessy explained that counsel from

---

[2] Mr. Wilson's 2004 Declaration and pages of relevant deposition transcripts have not been attached as exhibits to this Memorandum. However, to the extent the Court determines it is necessary to review such documents in deciding the Motion to Enforce Subpoena and Compel Deposition, SCO will produce copies of these documents for the Court's review.

3

Cravath, Swaine & Moore in New York, the firm serving as co-counsel for IBM and representing Mr. Wilson, was unavailable to participate in the teleconference. (Normand Decl. ¶ 7.) The conference call was not transcribed; however, the docket record contains a brief summary of part of the discussion regarding deposition scheduling that took place during the conference call. (Normand Decl. ¶ 11.)

During the call, Mr. Normand raised the issue of Mr. Wilson's deposition, and Mr. Shaughnessy represented that although his firm did not represent Mr. Wilson, to the extent Mr. Wilson had been properly served with the subpoena and was therefore obligated to appear for deposition, Mr. Shaughnessy requested that the deposition be postponed. (Normand Decl. ¶ 8.) Mr. Normand informed Magistrate Judge Wells that while it was his understanding that Mr. Wilson had been properly served with a proper subpoena – and was therefore obligated to appear for deposition the next day – Mr. Normand would agree, as a courtesy to counsel, to Mr. Shaughnessy's request to postpone Mr. Wilson's deposition on behalf of IBM[3] rather than on behalf of Mr. Wilson. Mr. Normand conditioned his consent on the understanding that Mr. Wilson remained under subpoena and would be produced for deposition sometime after January 27. (Normand Decl. ¶ 10.) Mr. Shaughnessy agreed. (Normand Decl. ¶ 10.)

The parties also discussed the scope of Mr. Wilson's impending deposition during the teleconference. (Normand Decl. ¶¶ 9, 11.) Magistrate Judge Wells orally ordered that SCO

---

[3] In her January 26 *ore tenus* order, Magistrate Judge Wells ratified the parties' agreement that Mr. Wilson would appear for deposition pursuant to the January subpoena sometime in February. IBM may attempt to assert that the January 26 agreement is somehow null and void because Mr. Shaughnessy did not represent Mr. Wilson personally. However, the fact that Mr. Shaughnessy did not represent Mr. Wilson personally was an *express topic* of the January 26 teleconference. Indeed, counsel reached their agreement and the Court ratified the agreement in *express consideration* of the fact that Mr. Shaughnessy did not represent Mr. Wilson. It bears emphasis, as Mr. Normand noted during the conference call with the Utah Court, that Mr. Shaughnessy's firm is co-counsel for IBM with the Cravath firm and that Mr. Shaughnessy sought the postponement of Mr. Wilson's deposition, not on behalf of Mr. Wilson but on behalf of IBM, because counsel for IBM was neither planning to attend nor prepared to attend Mr. Wilson's deposition on January 27. (Normand Decl. ¶ 8.)

4

would be permitted to ask Mr. Wilson about any "new matters" that had arisen since his June 2004 deposition, specifically including Mr. Wilson's 1992 deposition testimony. (Normand Decl. ¶ 11.) Magistrate Judge Wells further ordered that SCO would not be permitted to ask Mr. Wilson about any "personal matters," based on Mr. Shaughnessy's representation of his understanding that during the June 2004 deposition Mr. Wilson had been asked a number of questions regarding such matters. (Normand Decl. ¶ 11.) The entry in the docket reflects that Order. (Normand Decl. ¶ 8.)

### C. SCO's Subsequent Efforts to Have Mr. Wilson Appear for Deposition

Counsel for SCO thereafter engaged in a fruitless effort to have IBM honor its agreement to permit SCO to depose Mr. Wilson, pursuant to the subpoena, after January 27. (Normand Decl. ¶¶ 12-17.) After weeks of inquiries from SCO regarding the scheduling of Mr. Wilson's deposition,[4] counsel for IBM informed counsel for SCO that Mr. Wilson had "North Carolina" counsel – Mr. Michael Medford of the Manning Fulton firm. (Normand Decl. ¶¶ 9, 15-16.) However, in response to inquiries from counsel for SCO, David Marriott of the Cravath firm has represented his understanding that the Cravath firm continues to represent Mr. Wilson, as well.

Since his introduction as Mr. Wilson's new (and at least co-) counsel, Mr. Medford has met and conferred with Mr. Normand by phone on several occasions. (Normand Decl. ¶ 17.) The discussions culminated in early March with Mr. Normand's offer to depose Mr. Wilson for one morning (no more than three hours of tape time) regarding his 1992 deposition testimony and its bearing on his June 2004 testimony – well within the scope of the deposition as ordered by Magistrate Judge Wells. Mr. Normand informed Mr. Medford during phone calls on April 5,

---

[4] Considering all of the foregoing circumstances, SCO has sought to serve Mr. Wilson with an additional subpoena numerous times since March 14, 2006 at his residence in Greensboro. Mr. Wilson inexplicably has not been available on any of the numerous occasions when the process server has visited.

5

11, and 12 that, absent agreement to Mr. Normand's proposal, SCO would need to file a motion to compel Mr. Wilson's testimony.

## ARGUMENT

Under Rule 45 of the Federal Rules of Civil Procedure, in determining whether to enforce a subpoena, the trial court should determine "the relevance of the discovery sought, the requesting party's need, and the potential hardship to the party subject to the subpoena." *Schaaf v. SmithKline Beecham Corp.*, 233 F.R.D. 451, 453 (E.D.N.C. 2005) (citations omitted); *see also* Fed. R. Civ. P. 26(b)(2) (allowing a district court to limit discovery where the "(i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit"). In this case, the Court should grant SCO's motion to compel Mr. Wilson's deposition or enforce the January subpoena because the information sought from Mr. Wilson is clearly relevant to the Utah litigation, SCO has a substantial need for Mr. Wilson's testimony, and attending a brief deposition in his hometown is not burdensome to Mr. Wilson.

### A. The Discovery Sought from Mr. Wilson Is Clearly Relevant to the Underlying Litigation.

It cannot be disputed that Mr. Wilson, as a negotiator and signatory to the software agreements at issue, is a very important witness in the underlying Utah litigation. Indeed, IBM acknowledged the relevance of Mr. Wilson's testimony when it noticed Mr. Wilson's deposition in June 2004, after having secured a declaration from him. Magistrate Judge Wells confirmed the plain import of Mr. Wilson's testimony when she overruled the objections of counsel for

6

IBM to preclude SCO's own deposition of Mr Wilson based on "new matters" or "new information."

### B. SOC Has Substantial Need for the Information Sought to be Obtained Through Mr. Wilson's Deposition.

Mr. Wilson was involved in negotiation of the 1985 contracts and thus played an integral role in the transaction that is at issue in the underlying litigation. In addition, since the time of his June 2004 testimony, numerous deponents in the Utah litigation have identified Mr. Wilson as an important person with respect to the negotiation of the 1985 agreements and have testified that Mr. Wilson's testimony regarding the negotiation and meaning of the 1985 agreements is relevant to an interpretation of those agreements. This is not a situation in which the information sought from Mr. Wilson is merely duplicative of other information obtained during discovery or that is otherwise obtainable from another source. *See Schaaf v. Smithkline Beecham Corp*, 233 F.R.D. 451, 454 (N.C.W.D. 2005) (denying motion to enforce subpoena where the discovery sought from a third party was easily obtainable from the defendant.) As such, SCO has a substantial need for Mr. Wilson's testimony.

Moreover, the fact that Mr. Wilson had his deposition taken for this case almost two years ago does not diminish SCO's need to obtain this information from Mr. Wilson. SCO understandably took the opportunity to ask questions of Mr. Wilson during the June 2004 deposition, but the decision to do should not prevent SCO from conducting a deposition of Mr. Wilson in light of the additional, important facts that have been learned through discovery.

### C. Mr. Wilson Will Not Suffer Any Hardship By Complying With the January Subpoena.

The deposition will not pose any undue burden on Mr. Wilson, and the important testimony SCO seeks from Mr. Wilson far outweighs the minimal burden that he faces in appearing for a deposition in his hometown. This is not a situation, for example, in which a non-

7

party has been subpoenaed to produce a voluminous amount of documents at an inordinate cost. To the contrary, the only thing required of Mr. Wilson is a few hours of his time; the fact that Mr. Wilson is currently retired makes this brief imposition even more reasonable.

Moreover, if Mr. Wilson or IBM's counsel wished to challenge either the propriety or the scope of the subpoena, the Rules of Civil Procedure provided them with proper means to do so. For instance, Mr. Wilson or his counsel could have filed "a motion to quash or modify the subpoena pursuant to Fed. R. Civ. P. 45(c)(3)(A)" or moved "for a protective order pursuant to Fed.R.Civ.P. 26(c)." *United States v. Star Scientific, Inc.*, 205 F. Supp. 2d 482, 484 (D. Md. 2002); *see United States v. Quality Built Constr.*, 358 F. Supp. 2d 487, 491 (E.D.N.C. 2005) (granting motion to enforce subpoena and denying motion to quash where party subject to subpoena had "not made a sufficient showing that complying with the subpoenas would be unreasonable and oppressive"). Because Mr. Wilson did not challenge the scope or propriety of the subpoena and because he cannot make the requisite showing of hardship or burdensomeness, the Court should grant SOC's motion to enforce the subpoena.

8

## CONCLUSION

SCO respectfully requests that the Court order Mr. Wilson to appear for deposition pursuant to Rules 30 and 45 of the Federal Rules of Civil Procedure.

This the 12th day of April, 2006.

*Robert R. Marcus by hhw*
Robert R. Marcus
N.C. State Bar No. 20041
Heather H. Wright
N.C. State Bar No. 28874

OF COUNSEL:

SMITH MOORE LLP
P.O. Box 21927 (27420)
300 N. Greene Street, Suite 1400
Greensboro, North Carolina 27401
Telephone: (336) 378-5200
Facsimile: (336) 378-5400

BOIES, SCHILLER & FLEXNER LLP
Robert Silver
Edward Normand
333 Main Street
Armonk, New York 10504
Telephone: (914) 749-8200
Facsimile: (914) 749-8300

*Attorneys for The SCO Group, Inc.*

9

## CERTIFICATE OF SERVICE

The SCO Group, Inc. hereby certifies that a true and correct copy of the foregoing was served by facsimile and first-class mail on International Business Machines Corporation and counsel for Otis Wilson as follows:

David Marriott, Esq.
Cravath, Swaine & Moore LLP
Worldwide Plaza
825 Eighth Avenue
New York, New York 10019
Facsimile: 212) 474-3700

Todd Shaughnessy, Esq.
Snell & Wilmer LLP
1200 Gateway Tower West
15 West South Temple
Salt Lake City, Utah 84101-1004
Facsimile: (801)-257-1800

Michael T. Medford, Esq.
Manning, Fulton & Skinner, P.A.
Glenwood Plaza, Suite 500,
3605 Glenwood Avenue
P.O. Box 20389
Raleigh, North Carolina 27619-0389
Facsimile: (919)-787-8902

This the 12th day of April, 2006.

*Heather H. Wright*
Heather H. Wright