IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
CIVIL ACTION NO. 01: 06-mc-00046 PTS

| | |
|---|---|
| The SCO Group, Inc., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| International Business Machines Corp., | ) |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |

**MEMORANDUM IN RESPONSE TO PLAINTIFF'S MOTION TO
ENFORCE SUBPOENA AND COMPEL DEPOSITION AND IN SUPPORT
OF MOTION TO QUASH SUBPOENA AND FOR PROTECTIVE ORDER**

Respondent Otis L. Wilson, through undersigned counsel and pursuant to Local Rule 7.3 (M.D.N.C.) submits this brief in response to Plaintiff's Motion to Enforce Subpoena and Compel Deposition and in support of Mr. Wilson's Motion to Quash and For Protective Order.

## PRELIMINARY STATEMENT

The matter before the court relates to a subpoena that purports to have been issued in connection with a lawsuit between the SCO Group, Inc. ["SCO Group"] and International Business Machines Corporation ["IBM"] in the United States District Court for the District of Utah. Mr. Wilson is not a party to the lawsuit. He is a retired former employee of AT&T and he resides in Greensboro, North Carolina.

Mr. Wilson was previously deposed in that action on June 10, 2004. According to the transcript, it began at 9:27 am and did not conclude until 7:27 pm. Counsel for both parties were

Dockets.Justia.com

present at the deposition and examined Mr. Wilson.  The transcript reflects that counsel for SCO Group examined Mr. Wilson for five hours from 1:12 pm to 6:22 pm.

SCO Group now has issued to Mr. Wilson a subpoena that purports to require him to appear for a second deposition in the same case.  As reflected by the copy attached to SCO Group's papers, the subpoena does not comply with the requirement of Rule 35(a)(1)(C) that a subpoena specify the place at which deposition testimony is to be taken.  Mr. Wilson was informed that the deposition would not take place on the date specified in the subpoena, and no new date has been fixed.

When discussions among counsel failed to reach agreement with respect to the proposed second deposition, SCO Group filed a purported Motion to Enforce Subpoena and Compel Deposition.  Mr. Wilson has now filed a Motion to Quash and for Protective Order.  This memorandum opposes SCO Group's motion and supports Mr. Wilson's motion.

## ARGUMENT

**I.  SCO Group Has Not Shown Good Reason To Subject Mr. Wilson To the Burden of a Duplicative Deposition.**

Mr. Wilson, as a third party witness, should not be subjected to the burden of a second deposition when he has already been deposed for more than a full day in the same case. Requiring him to appear for a duplicative deposition would be unduly burdensome and harassing.

Absent some good cause not shown here, requiring a non-party to appear for a duplicative deposition is contrary to the fair and efficient administration of justice.  *See, e.g., Dickson v. Certainteed Corp.,* 164 F.R.D. 685, 690 (D. Kan. 1996):

> Absent some showing of a need or good reason for doing so, "the court will generally not require a deponent to appear for a second deposition."  *Lone Star Industries, Inc. v. River's Bend Red-E-Mix,*

-2-

*Inc.* No. 90-2349-V, unpublished opinion at 4 (D. Kan. Oct. 6, 1992). "Courts generally disfavor repeat depositions." *In re Star Com, Inc.,* at 1-2.

*See also Miller v. Federal Express, Corp.* 186 F.R.D. 376, 389 (W. D. Ten. 1999) (second deposition is disfavored) and F.R. Civ. Pr. 30(a)(2)(B) (requiring court approval for second deposition of the same person).

SCO Group has not shown any of the circumstances that typically justify a second deposition such as a change in parties, a change in claims or legal theories at issue or other such circumstances that could not have been foreseen at the time of the original deposition. Indeed, as reflected by the docket of the Utah Action (Attachment 1. A and 1.B to this brief), there has been no amendment to the pleadings allowed since Mr. Wilson's original deposition. Although SCO Group says that Mr. Wilson's deposition was taken "early" in discovery, the docket reflects that the action had in fact been pending for almost a year and a quarter at the time Mr. Wilson was deposed, and the original scheduling order was entered on July 7, 2003, almost a year before Mr. Wilson's deposition.

Although SCO Group itself admits that the Utah Court has limited the second deposition of Mr. Wilson, if any, to "new matters," SCO's motion and supporting brief do not demonstrate any <u>new</u> matters upon which they want to depose Mr. Wilson. Instead, the SCO Group asks this court to compel a second deposition for three reasons, none of which can survive scrutiny and none of which relate to new matters.

First, SCO Group says that its counsel had not fully reviewed some documents produced by non-party Novell before Mr. Wilson was deposed the first time. [SCO Group Brief p. 2] Obviously, counsel's failure to review documents <u>that were produced prior to the first deposition</u>

-3-

does not constitute new matter.[1]  What is more, Mr. Wilson, as a non-party, had no control over

when documents were produced and the extent to which counsel for the parties chose to review

those documents before deposing him.  Finally, it is possible that SCO Group had the Novell

documents before Novell's production of them in the lawsuit.  As reflected by the excerpts from

SCO Group's Second Amended Complaint which are at Attachment 2 to this brief, Novell was

SCO Group's predecessor in interest on the license agreements at issue in the lawsuit, thus

raising a question about whether SCO Group would have received some or all of the documents

in the regular course of business as part of its acquisition of the license.  Certainly, SCO Group's

own brief suggests that it had the documents and was aware of them at least a week before Mr.

Wilson's original deposition.  Significantly, SCO Group's counsel has been unable, either in its

papers or in prior discussions with undersigned counsel for Mr. Wilson to identify any

documents relating to Mr. Wilson that were produced after his deposition and that justify a

second deposition.

Second, the SCO Group argues that subsequent deponents have identified Mr. Wilson as

an important person in the negotiation of the 1985 agreements whose testimony is relevant to an

interpretation of those agreements.  [SCO Group Brief p. 3,7.]  Again, this is not "new matters."

Mr. Wilson's first deposition exhaustively covered the negotiation and interpretation of those

agreements.  [*See* Transcript at Attachment 3 to this brief and specific selected examples at

---

[1]     The peculiar wording of SCO Group's brief and the declaration of Edward Normand suggest
that the documents had been produced by Novell at some unidentified prior date and that counsel
for SCO Group only "discovered" the documents relating to Mr. Wilson in the production "a
week" before the Wilson deposition.  [Compare SCO Group Brief at 2 with Declaration of
Edward Normand § 9.]  The significant point is that counsel for SCO Group did have an
opportunity to review the documents relating specifically to Mr. Wilson at least a week prior to
his deposition, and there is no indication that the documents relating to Mr. Wilson (as
distinguished from the entire Novell production) could not have been reviewed in a week or even
"a few days."

Attachment 3.B, Transcript pp. 185-186, 203-204, 214, 218.]  Indeed, the deposition transcript reflects that, other than some intrusive questions about personal matters by counsel for SCO Group, the principle areas of examination by both sides in Mr. Wilson's original deposition related to the negotiation and interpretation of those agreements.  Thus, SCO Group's argument that it wants to depose Mr. Wilson about his role in the negotiation and interpretation constitutes an admission that it wants to examine him about old matters, not new matters.  Mr. Wilson was not a party to that ruling.  In addition, the fact that subsequent deponents have referred to an earlier deponent, without more, should not constitute good reason to subject a third party witness to a second deposition.  Most litigation attorneys can think of additional questions that they would like to have asked an earlier deponent after they have deposed subsequent witnesses in a case.  If that were valid grounds for a duplicative deposition no witness would ever be safe from a second deposition.

Third, the SCO Group asserts that it only had a limited time to cross-examine Mr. Wilson in his first deposition.  [SCO Group Brief p. 2.]  This assertion is unsupported by the deposition transcript which reflects Mr. Wilson was cross-examined for approximately five hours by counsel for the SCO Group.  Certainly, it does not reflect a desire to depose Mr. Wilson on <u>new</u> matters.  Rather, it suggests that SCO Group wants a second bite at the apple on old matters.

Contrary to SCO Group's contention, no ruling in the Utah Action prejudges the appropriate outcome of Mr. Wilson's objection to duplicative depositions.  Upon information and belief, the Magistrate judge assigned to the Utah Action has granted SCO Group leave to take certain depositions including the deposition of Mr. Wilson, beyond the original discovery cut-off.  Upon information and belief, however, the Utah Court did not purport to adjudicate any rights of Mr. Wilson to be free from the undue burden of a duplicative deposition, and the

Magistrate judge declined to limit the exercise of this Court's authority in ruling on an objection by Mr. Wilson.[2]  Indeed, it is questionable whether such a limitation would have been appropriate since Mr. Wilson was not a party to the Utah Action or the discussion with the Magistrate judge.

## II.     In the Alternative, the Court Should Place Meaningful Limits On Any Second Deposition.

Even if (contrary to fact) SCO Group had shown good reason to depose Mr. Wilson a second time, it would be appropriate for the court to place meaningful limits on the second deposition to avoid undue burden to and harassment of Mr. Wilson.

First, Mr. Wilson requests that the court place a strict time limit (*i.e.,* no more than two hours) on the second deposition in recognition that he has already been deposed in excess of the seven-hour limit imposed by Rule 30(d)(2) and that SCO Group has not identified any truly new matter requiring greater length.  Mr. Wilson requests that any such time limit must be shared equally among the parties to the litigation.

Second, if the Court allows the deposition at all (which, again, respectfully, it should not), the Court should require SCO Group to provide, in advance, sufficiently clear subject matter limitations on the scope of the proposed examination so that the court can evaluate whether the proposed examination is unnecessarily duplicative and so that such limitations can be followed during the deposition without excessive dispute and delays to invoke the court's interpretation as the deposition proceeds.

---

[2]     The understanding of undersigned counsel on this point is based on communications with Todd Shaughnessy, a lawyer in Salt Lake City, Utah, who represents IBM in the SCO Group case.  Mr. Shaughnessy is out of the country, and unavailable to execute an affidavit to rebut the contrary affidavit of SCO Group's counsel.  If the court views this point as dispositive, Mr. Wilson requests an opportunity to obtain and submit an affidavit from Mr. Shaughnessy upon his return to the country.  Upon information and belief, Mr. Shaughnessy is expected to be back in his office on Monday, April 24.

In this regard, SCO Group's papers in this court demonstrate that the limitation to "new matters – which is the only guidance in the brief minutes of the Utah Court's ruling – is likely to be a fertile breading ground for dispute about what is "new." As discussed above, SCO Group's own papers show an intent to ignore the limitations of new matters and to go back over issues relating to the negotiation and interpretation of agreements that were exhaustively covered in the original deposition. This should not be permitted. In addition, examination of Mr. Wilson about documents and transcripts that were produced to SCO Group before his original deposition hardly constitutes "new matters," nor would examination of Mr. Wilson about what subsequent deponents have said about the same subject matter constitute a limitation to "new matters." Thus, allowing a duplicative deposition to proceed without more specific time and subject matter limitations would embroil this Court and/or the Utah Court (and Mr. Wilson) in efforts to determine whether SCO Group's examination is – as its brief seems to suggest – exceeding the limitation to new matters.

## CONCLUSION

In light of the foregoing, this court should deny SCO Group's Motion to Enforce Subpoena and Compel Deposition and issue an order quashing the subpoena. In the alternative, the court should issue an appropriate protective order limiting the deposition of Mr. Wilson to two hours or less and providing that examination of Mr. Wilson shall be limited to truly new matters that have arisen since his original deposition, thereby excluding examination on matters (i) that were covered in his original deposition and/or (ii) that could have been covered at such time.

This the  21st day of  April   , 2006.

                              ___/s/Michael T. Medford_____
                              Michael T. Medford
                                N.C. State Bar # 7227
                              MANNING, FULTON & SKINNER, P.A.
                              3605 Glenwood Avenue - Suite 500
                              Post Office Box 20389
                              Raleigh, North Carolina  27619
                              Telephone:      (919) 787-8880
                              Telefax:        (919) 787-8902
                              E-mail:         medford@manningfulton.com

## <u>CERTIFICATE OF SERVICE</u>

       This is to certify that a copy of the *Memorandum in Support of Motion to Quash Subpoena and for Protective Order and in Response to Plaintiff's Motion to Enforce Subpoena and Compel Deposition* was duly served this date on counsel for all parties by electronic means if available or otherwise by forwarding a copy thereof enclosed in a postage-paid envelope, deposited in the United States Mail, addressed as follows:

Brent O. Hatch
Mark F. James
HATCH JAMES & DODGE
10 West Broadway, Suite 400
Salt Lake City, Utah 84101
Telephone:  (801) 363-6363
Facsimile:  (801) 363-6666

Stuart H. Singer (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER, LLP
401 East Las Olas Boulevard, Suite 1200
Ft. Lauderdale, Florida 33301
Telephone: (954) 356-0011
Facsimile:  (954)-356-0022

Robert Silver (admitted pro hac vice)
Edward Normand (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER, LLP
333 Main Street
Armonk, New York 10504
Telephone (914) 749-8200
Facsimile:  (914) 749-8300

Stephen N. Zack (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER, LLP
Bank of America Tower, Suite 2800
100 Southeast Second Street
Miami, Florida 33131
Telephone:  (305) 539-8400
Facsimile:  (305) 539-1370

David Marriott
Cravath, Swaine & Moore, LLP
Worldwide Plaza
825 Eighth Avenue
New York, New York 10019

Todd Shaughnessy
Snell & Wilmer, LLP
1200 Gateway Tower West
15 West South Temple
Salt Lake City, Utah 84101-1004

Donald J. Rosenbeg
1133 Westchester Avenue
White Plains, New York 10604


This the 21st_ day of _April__, 2006.



___/s/Michael T. Medford_____
Michael T. Medford
  N.C. State Bar # 7227
Of MANNING, FULTON & SKINNER, P.A.
Attorneys for Otis L. Wilson
3605 Glenwood Avenue - Suite 500
Post Office Box 20389
Raleigh, North Carolina  27619-0389
Telephone:  (919) 787-8880
Facsimile:  (919) 787-8902
E-Mail:      medford@manningfulton.com


482469.doc

-10-