UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF NORTH CAROLINA
CIVIL ACTION NO. 01: 06-MC-00046 PTS

THE SCO GROUP, INC.,

　　Plaintiff/Counterclaim-Defendant,

v.

INTERNATIONAL BUSINESS
MACHINES CORPORATION,

　　Defendant/Counterclaim-Plaintiff.

**PLAINTIFF'S REPLY MEMORANDUM IN FURTHER SUPPORT OF
MOTION TO ENFORCE SUBPOENA AND COMPEL DEPOSITION**

Pursuant to Rules 30 and 45 of the Federal Rules of Civil Procedure and Local Rule 7.3 of the United States District Court for the Middle District of North Carolina, Plaintiff, The SCO Group, Inc. ("SCO"), submits the following Reply Memorandum in further support of its Motion to Enforce Subpoena and Compel the Deposition of Non Party Otis Wilson.

**PRELIMINARY STATEMENT**

As a courtesy to counsel for IBM and Mr. Wilson, SCO agreed to reschedule Mr. Wilson's deposition from January 27, 2006, to a subsequent date that counsel was ordered by Magistrate Judge Wells to identify as more convenient for Mr. Wilson and IBM. SCO agreed to do so where SCO had already served Mr. Wilson with a proper and binding subpoena to appear for deposition the following day, and where Magistrate Judge Wells had ruled over counsel's specific and repeated objection that SCO be permitted to depose Mr. Wilson.

Mr. Wilson's brief confirms that, notwithstanding SCO's courtesy and Magistrate Judge Wells's Order, counsel for IBM and Mr. Wilson have viewed the postponement of the deposition as an opportunity to decline to produce Mr. Wilson for deposition and to reargue the merits of

the propriety of the deposition in another forum. Moreover, they do so despite IBM's repeated *acknowledgment* of its obligation to schedule a new date for the deposition. It was that gamesmanship that forced SCO to file the instant motion to enforce the Magistrate Judge's order.[1]

Apart from these sharp practices, Mr. Wilson's opposition to SCO's motion fails on two principal counts. First, Mr. Wilson rehashes the same arguments that were raised before and rejected by Magistrate Judge Wells three months ago, when she resolved this issue in SCO's favor by expressly ordering the parties to choose a mutually agreeable date on which SCO could depose Mr. Wilson. Mr. Wilson in effect ignores the substance of that Order by seeking to relitigate the issue here. Second, on the renewed consideration of the merits, SCO has clearly demonstrated good cause to depose (in a location of his convenience) one of this case's central witnesses.

## **ARGUMENT**

### I. THE MAGISTRATE JUDGE IN THE UTAH LITIGATION RESOLVED THIS DISPUTE AND RULED THAT SCO WAS ENTITLED TO DEPOSE MR. WILSON.

Mr. Wilson fails to offer any reason this Court should reconsider a question that Magistrate Judge Wells has already resolved. Rather, Mr. Wilson appears to contend that Magistrate Judge Wells did not actually decide the issue of whether SCO could depose Mr. Wilson. His counsel Mr. Medford, who did not participate in the hearing, summarily states that "the Utah Court did not purport to adjudicate any rights of Mr. Wilson to be free from the undue

---

[1] Although Mr. Wilson claims that the subpoena is technically deficient because it does not specify "the place at which deposition testimony is to be taken" (Resp. at 2), Mr. Wilson has not cited any case law or Rule of Civil Procedure supporting the proposition that failure to include a specific location in a deposition subpoena may serve as the basis for quashing a subpoena. Moreover, in the numerous deposition notices that have been served in the Utah litigation, it has often been SCO's practice, without objection from IBM, *not* to name a location for the deposition but to meet and confer with counsel for IBM to determine a location convenient to both parties.

2

burden of a duplicative deposition." (Resp. at 5). This assertion is not only an incorrect representation of the *ore tenus* Order, but is made without any challenge to the accuracy of the declaration of counsel for SCO explaining otherwise.

In fact, the issue of whether Mr. Wilson would be subject to deposition in Greensboro was precisely the issue raised during the January 26 teleconference. Contrary to the representations of Mr. Wilson's counsel, Magistrate Judge Wells was fully aware of the circumstances surrounding Mr. Wilson's June 2004 deposition and referenced that deposition numerous times during the parties' argument regarding IBM's request to reschedule the January 27 deposition. Indeed, Magistrate Judge Wells could not have ruled that SCO be permitted to depose Mr. Wilson regarding "new materials" and "new matters" if she had not specifically considered both the fact of the June 2004 deposition and counsel's arguments about the scope of SCO's impending deposition of Mr. Wilson. Satisfied that there was good reason for SCO to depose Mr. Wilson, Magistrate Judge Wells ruled in favor of SCO and delineated the scope of the deposition as well. Accordingly, even independent of the accurate declaration of counsel for SCO, the plain text of the docket entry of the Magistrate Judge's *ore tenus* ruling confirms that Magistrate Judge Wells considered Mr. Wilson's June 2004 deposition in ruling that SCO be allowed to depose Mr. Wilson on a mutually agreeable day in February of this year.

As an attack on the propriety of Judge Wells's Order, Mr. Wilson appears to assert that the Order should have no force or effect because he was not represented at the hearing. To the extent that Mr. Wilson is challenging Judge Wells's Order, such a collateral attack in this Court is not proper. Mr. Wilson would have had to challenge the propriety of the Order in the District of Utah. *Celotex Corp v. Edwards*, 514 U.S. 300, 313 (1995) (explaining that "it is for the court of the first instance to determine the question of the validity of the law, and until its decision is

3

reversed for error by orderly review, either by itself or by a higher court, its orders based on its decision are to be respected").

Moreover, Mr. Wilson's challenge fails. As of January 26, 2006, Mr. Wilson was represented by the Cravath firm, which was co-counsel to the Snell & Wilmer firm in the Utah litigation. The Cravath firm was given more than adequate notice of the January 26 conference before Magistrate Judge Wells concerning Mr. Wilson's deposition. Mr. Marriott of that firm decided that he could not participate in the conference, and apparently also made the decision that no other attorney from that firm needed to appear for the hearing. In appearing for IBM, Mr. Shaughnessy of Snell & Wilmer asserted that Mr. Wilson was not prepared to appear for the deposition, and also argued at length both that the deposition should not proceed at all and that, if the deposition were to proceed, the scope of the deposition should be limited. In addition, the fact that Mr. Shaughnessy, counsel for IBM, was making such arguments on Mr. Wilson's behalf was an express topic of the January 26 conference. When Snell & Wilmer sought the rescheduling of Mr. Wilson's deposition, his interests were well represented.[2]

On these independently sufficient bases, the Court should require Mr. Wilson to appear for deposition in accordance with Magistrate Judge Wells's Order.

## II. SCO HAS ALSO DEMONSTRATED GOOD CAUSE TO DEPOSE MR. WILSON.

As to Mr. Wilson's attempt to revisit the merits, the central role he plays in a multi-billion dollar litigation coupled with IBM's untimely production of new and highly relevant evidence clearly justify the deposition. Mr. Wilson makes only a vague and unsubstantiated

---

[2] There can be no serious question that Mr. Wilson and IBM, as well as the Cravath firm and the Snell & Wilmer firm, are in privity in this litigation. While representing IBM and serving as co-counsel for Snell & Wilmer, the Cravath firm accepted the representation of Mr. Wilson. Indeed, IBM and Mr. Wilson were and are represented by the same counsel in the same litigation in circumstances in which IBM has repeatedly relied on Mr. Wilson's testimony in support of IBM's version of events.

4

burden argument that improperly seeks to minimize the relevance and importance of the ordered deposition.

Mr. Wilson asserts that second depositions are disfavored and require specific court approval. Even assuming the approximately four hours (as demonstrated by the actual tape time of the deposition) of questioning that SCO conducted of Mr. Wilson in June 2004 constitutes a full "deposition" for SCO[3], SCO has already obtained the "specific court approval" to conduct a "second deposition" of Mr. Wilson. Magistrate Judge Wells carefully considered the circumstances surrounding SCO's request to depose Mr. Wilson and specifically allowed for this particular witness to be deposed.

In fact, in similar circumstances, the respective courts in the two cases cited by Mr. Wilson both ordered second depositions. *See Dickson v. Certainteed Corp.,* 164 F.R.D. 685, 692 (D. Kan. 1996); *Miller v. Federal Express Corp.*, 186 F.R.D. 376, 389 (W.D. Tenn. 1999). The *Dickson* court allowed a witness to be deposed regarding his prior contradictory statements in a situation quite similar to Mr. Wilson's. *Dixon*, 164 F.R.D. at 692 (noting that "had plaintiff known of such statements, he probably would have inquired about them at the first deposition").

Mr. Wilson does not dispute that the software agreements he signed stand at the heart of the Utah litigation or that SCO and IBM both regard Mr. Wilson's views as to the parties' intent under the 1985 agreements as highly relevant. Since IBM deposed Mr. Wilson in June 2004, crucial prior testimony that Mr. Wilson gave in a 1992 litigation regarding the interpretation and meaning of almost identical contracts has surfaced. Mr. Wilson's testimony in the 1992 litigation squarely contradicts the testimony he has given in this case. SCO's opportunity to confront Mr. Wilson with his previous testimony is particularly important given the chance that IBM may argue (contrary to the relevant rules of evidence, in SCO's view) that if IBM used Mr.

---

[3] The scheduling order in the Utah litigation allots seven hours to each deposition.

Wilson's June 2004 deposition testimony in this case, SCO could not cross-examine Mr. Wilson with his 1992 deposition testimony.

In his brief, Mr. Wilson claims that the transcripts of the testimony in question were produced sufficiently prior to Mr. Wilson's June 2004 deposition. This argument is unavailing. The 200 pages of prior testimony from Mr. Wilson was turned over to SCO in the days immediately preceding Mr. Wilson's deposition, and were buried among more than 50,000 pages of documents that SCO could not possibly have examined, let alone comprehensively reviewed, in time for IBM's deposition of Mr. Wilson on June 10.[4]

Finally, Mr. Wilson appears to argue that SCO intends to exceed the scope of Magistrate Judge Wells's Order that Mr. Wilson be asked about new materials or new matters. (Resp. at 3, 6). It is an odd argument, given that Mr. Wilson and IBM otherwise decline to concede that the Magistrate Judge's Order has any effect. Regardless, Mr. Wilson's argument fails, since Magistrate Judge Wells specifically considered and decided that SCO is entitled to ask about Mr. Wilson's deposition testimony in 1992. In asking Mr. Wilson about the meaning and significance of that testimony, SCO by definition will be asking him about new materials and new matters.

In short, even if Magistrate Judge Wells had not already resolved this matter by ordering that the parties agree to a date for Mr. Wilson's deposition, SCO should be permitted to confront Mr. Wilson with evidence that SCO was not able to use during IBM's 2004 deposition.

---

[4] It bears mentioning, moreover, that IBM possessed those materials for some time before turning them over to SCO. Some two weeks before IBM actually produced the documents, its counsel wrote a letter to SCO saying that they were to produce documents received from a list of third parties. Although the materials that IBM produced many days later included the production from Novell Inc. that contained Mr. Wilson's prior testimony, IBM had never told SCO that any materials from Novell would be included in the production. Accordingly, even if SCO could have somehow uploaded and reviewed 50,000 pages of material in one week, SCO had no reason to believe that any Novell documents – including these crucial materials – would be included in that production.

## CONCLUSION

SCO respectfully requests that the Court order Mr. Wilson to appear for deposition pursuant to Rules 30 and 45 of the Federal Rules of Civil Procedure.

This the 25th day of April, 2006.

/s/ Robert R. Marcus
Robert R. Marcus
N.C. State Bar No. 20041
Heather H. Wright
N.C. State Bar No. 28874

OF COUNSEL:

SMITH MOORE LLP
P.O. Box 21927 (27420)
300 N. Greene Street, Suite 1400
Greensboro, North Carolina 27401
Telephone: (336) 378-5200
Facsimile: (336) 378-5400


BOIES, SCHILLER & FLEXNER LLP
Robert Silver
Edward Normand
333 Main Street
Armonk, New York 10504
Telephone: (914) 749-8200
Facsimile: (914) 749-8300

*Attorneys for The SCO Group, Inc.*

## CERTIFICATE OF SERVICE

  This is to certify that on this date, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

  Michael T. Medford, Esq.
  Manning, Fulton & Skinner, P.A.
  Glenwood Plaza, Suite 500,
  3605 Glenwood Avenue
  P.O. Box 20389
  Raleigh, North Carolina 27619-0389
  Facsimile: (919)-787-8902

  And I hereby certify that a true and correct copy of the foregoing was served on the following non CM/ECF participants by first-class United States mail, postage prepaid, addressed as follows:

  David Marriott, Esq.
  Cravath, Swaine & Moore LLP
  Worldwide Plaza
  825 Eighth Avenue
  New York, New York 10019
  Facsimile: 212) 474-3700

  Todd Shaughnessy, Esq.
  Snell & Wilmer LLP
  1200 Gateway Tower West
  15 West South Temple
  Salt Lake City, Utah 84101-1004
  Facsimile: (801)-257-1800

This the 25th day of April, 2006.

            /s/ Robert R. Marcus
            Robert R. Marcus