IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
CIVIL ACTION NO. 01: 06-mc-00046 PTS

| | |
|---|---|
| The SCO Group, Inc., | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) |
| International Business Machines Corp., | ) ) |
| Defendant. | ) ) ) ) |

## DECLARATION OF TODD M. SHAUGHNESSY

1. I am more than eighteen years of age and all statements in this declaration are based on my personal knowledge, except as otherwise expressly indicated.

2. I am duly licensed by the Utah State Bar as an attorney at law, and I am admitted to practice before the United States District Court for the District of Utah. I am a partner with the law firm of Snell & Wilmer, LLP.

3. I am counsel of record for International Business Machines ["IBM"] in a case pending before the United States District Court for the District of Utah bearing the caption *The SCO Group, Inc. v. International Business Machines Corp.*, and designated as Civil Action No. 2:03CV-0294DAK.

4. Neither myself nor Snell & Wilmer have ever represented Mr. Otis L. Wilson. Indeed, I have never even met or spoken to Mr. Wilson.

5. I have reviewed the attached Declaration of Edward Normand that I understand to have been submitted in connection with motions relating to the proposed deposition of Mr.

394663.1

Dockets.Justia.com

Wilson. I have been personally involved in various proceedings before the Utah court with respect to the proposed deposition of Mr. Wilson, and submit this declaration to clarify what has occurred during those proceedings.[1]

6. On July 1, 2005, the Court in the Utah action set a deadline of January 27, 2006, for the completion of certain fact discovery, including the discovery for which The SCO Group, Inc. ["SCO"] seeks to take Mr. Wilson's deposition.

7. On January 26, 2006, the day prior to the expiration of that deadline, the parties held a telephone conference with Magistrate Judge Brooke Wells, the Magistrate Judge assigned to handle discovery matters in the Utah case. I participated in that conference call on behalf of IBM. Mr. Normand participated on behalf of SCO. At issue was a request by SCO to take five depositions. Mr. Wilson's deposition was among them.

8. Although counsel for SCO had provided a copy of a subpoena that purported to require Mr. Wilson to appear for a deposition on January 27, 2006 (with no location for the deposition specified), counsel for SCO did not provide me or file with the Utah court a return of service for that subpoena. Mr. Normand did not inform me that Mr. Wilson had been served with that subpoena until the day before the January 26 telephone conference, and less than two days before SCO purportedly intended to depose Mr. Wilson. Because of this, and because IBM objected to SCO taking Mr. Wilson's deposition, we had not made arrangements to appear for the deposition on January 27.

9. At the outset of the January 26 hearing, I informed Judge Wells that I was appearing for IBM, that I did not represent Mr. Wilson, and that I did not represent any of the

---

[1] I was out of the country on a family vacation from April 13, 2006 to April 23, 2006, during which time I understand some of the briefing on these motions was filed. Counsel for Mr. Wilson attempted to reach me during that time for the purpose of responding to Mr. Normand's declaration, but I was unable to respond.

other third parties whose depositions were the subject of the hearing. Three of the depositions at issue, for example, were of corporations that I knew were represented by their own counsel. I was sensitive to the fact that these corporations may have had their own reasons for filing motions for protective orders or to quash the subpoenas purportedly served on them (which I understand at least two subsequently did) and I did not believe it was appropriate for me to address whatever objections they may have had to the subpoenas. I therefore communicated very clearly to Judge Wells that I did not represent any of the third parties (including Mr. Wilson), that these third parties may have their own, independent reasons for challenging the subpoenas which I could not properly address, and that I was arguing against the depositions only on behalf of my client, IBM.

10. I informed the Court that IBM objected to these depositions for a variety of reasons. The principal reason was because the Court previously had ordered that these depositions must be completed by January 27, that SCO could and should have sought leave to take these depositions earlier in the case, and that SCO effectively was seeking to take these depositions during a time the Court had ordered discovery be limited to other matters. I also advised the Court that IBM objected to a second deposition of Mr. Wilson, and informed the Court that while I did not attend Mr. Wilson's deposition, and do not represent him, it was my understanding that counsel for SCO had asked him a number of questions about his personal life that were unrelated to any issue in the case and which I believe were inappropriate.

11. Judge Wells orally ruled that two of the depositions at issue, Mr. Wilson's deposition and the deposition of Mr. Ted Kennedy, could be taken after the January 27, 2006 discovery cutoff. With respect to Mr. Wilson's deposition, Judge Wells further ordered that

Case 1:06-mc-00046-PTS   Document 11-2   Filed 04/28/2006   Page 3 of 8

counsel for SCO was not to inquire into personal matters and that his deposition would be limited to "new information."

12. Contrary to the statements in Mr. Normand's declaration, I did not agree, during the telephone conference or thereafter, to make Mr. Wilson available for a deposition. As mentioned above, I do not represent Mr. Wilson, I have never spoken to him, and I have never had the authority to agree on his behalf to his deposition being taken a second time. During the hearing, I was asked by Judge Wells when his deposition could be taken. I informed the Court that we did not learn until the day before that SCO had purported to serve Mr. Wilson, that I was not certain whether he actually had been served, and we therefore could not appear for a deposition in North Carolina the next morning. I informed Judge Wells that counsel would cooperate in setting an appropriate date.

13. During February and early March 2006, I corresponded with Mr. Normand about a variety of discovery matters, including Mr. Wilson's deposition. In response to Mr. Normand's question, I informed him that we did not have a date for Mr. Wilson's deposition. I also attempted to get an understanding from Mr. Normand about what "new" information SCO intended to inquire during Mr. Wilson's deposition. Mr. Normand was unwilling to commit to any meaningful limitation in this regard.

14. I was advised that Mr. Wilson had counsel in North Carolina representing him and communicated this fact to Mr. Normand. I also communicated to him my belief that while Judge Wells had granted SCO leave to take this deposition after the discovery cutoff, I did not understand her to have ruled on whatever objections Mr. Wilson may have to his deposition being taken a second time.

15. Importantly, Mr. Normand's declaration omits any reference to our subsequent conference call with Judge Wells on the issue of Mr. Wilson's deposition. On March 3, 2006, Mr. Normand and I participated in a conference call with Judge Wells on various matters. During that call, I raised with Judge Wells the issue of Mr. Wilson's deposition and her January 26 ruling with respect to the taking of his deposition. I raised this issue with her for at least two reasons. First, I wanted to make sure she was aware of the status of this matter. Second, I hoped to get further guidance from her about whether she had indeed considered and rejected Mr. Wilson's objections to having his deposition taken a second time, as I understand SCO argues in the papers it has filed with the Court.

16. I advised Judge Wells that Mr. Wilson's deposition had not been taken, that he was represented by counsel in North Carolina, and that Mr. Wilson's North Carolina counsel was evaluating Mr. Wilson's objections to having his deposition taken a second time and was considering filing a motion with the Federal District Court in North Carolina, the Court from which the subpoena was issued. I reminded Judge Wells that Mr. Wilson was not represented at the January 26 hearing and that I understood her January 26 ruling to have resolved only the issue of whether SCO could take the deposition after the January 27, 2006 discovery cutoff.

17. In response, Mr. Normand argued to Judge Wells that her January 26 ruling was not so limited. Mr. Normand argued that Judge Wells had considered and rejected Mr. Wilson's various objections to having his deposition taken a second time and urged Judge Wells to limit the authority of the North Carolina Court to consider Mr. Wilson's objections. Judge Wells declined to do so. She informed Mr. Normand and me that matters relating to any objections or motion to quash by Mr. Wilson were matters that would need to be raised with the Court in North Carolina.

18. I understand that counsel for SCO has raised with this Court the issue of documents that were produced prior to Mr. Wilson's last deposition, including a transcript of his deposition in another matter. I was not personally involved in the production of these documents, but I am reliably informed and understand the following to be true:

(a). The documents to which SCO refers were not produced by IBM. The documents were produced by Novell, Inc. ["Novell"] in response to a subpoena. The documents were produced by Novell to Cravath, Swaine & Moore, LLP ["Cravath"], co-counsel for IBM in the Utah action.

(b). After receipt of the documents, Cravath copied the production in its entirety and as a courtesy provided it to counsel for SCO. The documents were provided in advance of Mr. Wilson's prior deposition. The manner and timing of the production was consistent with the way in which we have provided to SCO documents produced by other third parties.

(c). Additionally, the documents at issue were available to SCO long before being provided by Cravath. SCO has asserted from the beginning of the Utah case that it is Novell's successor-in-interest with respect to the assets at issue, and SCO has produced thousands of pages of documents that it received from Novell in connection with the acquisition of the assets at issue.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on the 28th day of April, 2006.

_____ [SEAL]
TODD M. SHAUGHNESSY

CERTIFICATE OF SERVICE

This is to certify that a copy of the *Declaration of Todd M. Shaughnessy* was duly served this date on counsel for all parties by electronic means if available or otherwise by forwarding a copy thereof enclosed in a postage-paid envelope, deposited in the United States Mail, addressed as follows:

BRENT O. HATCH
Mark F. James
HATCH JAMES & DODGE
10 WEST BROADWAY, SUITE 400
Salt Lake City, Utah 84101
Telephone: (801) 363-6363
Facsimile: (801) 363-6666

Stuart H. Singer (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER, LLP
401 East Las Olas Boulevard, Suite 1200
Ft. Lauderdale, Florida 33301
Telephone: (954) 356-0011
Facsimile: (954)-356-0022

Robert Silver (admitted pro hac vice)
Edward Normand (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER, LLP
333 Main Street
Armonk, New York 10504
Telephone (914) 749-8200
Facsimile: (914) 749-8300

Stephen N. Zack (admitted pro hac vice)
BOIES, SCHILLER & FLEXNER, LLP
Bank of America Tower, Suite 2800
100 Southeast Second Street
Miami, Florida 33131
Telephone: (305) 539-8400
Facsimile: (305) 539-1370

David Marriott
Cravath, Swaine & Moore, LLP
Worldwide Plaze
825 Eighth Avenue
New York, New York 10019

- 7 -

Case 1:06-mc-00046-PTS    Document 11-2    Filed 04/28/2006    Page 7 of 8

Todd M. Shaughnessy
Snell & Wilmer, LLP
1200 Gateway Tower West
15 West South Temple
Salt Lake City, Utah 84101-1004

Donald J. Rosenbeg
1133 Westchester Avenue
White Plains, New York 10604

This the _____ day of _April__, 2006.

            __/s/Michael T. Medford__
            Michael T. Medford
            N.C. State Bar # 7227
            Of MANNING, FULTON & SKINNER, P.A.
            Attorneys for Otis L. Wilson
            3605 Glenwood Avenue - Suite 500
            Post Office Box 20389
            Raleigh, North Carolina 27619-0389
            Telephone: (919) 787-8880
            Facsimile: (919) 787-8902
            E-Mail: medford@manningfulton.com

483629.-20064-L35387